1

2

3

4                                                              O

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   JOSEPH HENDERLONG,              )   Case No. CV 14-03610 DDP (PLAx)
                                     )
12                  Plaintiff,       )   **ORDER GRANTING IN PART AND**
                                     )   **DENYING IN PART DEFENDANT'S**
13        v.                         )   **MOTION FOR JUDGMENT ON THE**
                                     )   **PLEADINGS.**
14   SOUTHERN CALIFORNIA REGIONAL    )
     RAIL AUTHORITY AKA              )   [Dkt. No. 12]
15   METROLINK,                      )
                                     )
16                  Defendant.       )
     _____ )
17

18        Plaintiff asserts various causes of action, listed below,

19   associated with his hiring by, tenure at, and termination by

20   Defendant, the Southern California Regional Rail Authority

21   ("SCRRA").  Defendant moves for judgment on the pleadings under

22   Rule 12 (c), arguing, variously, that the claims are barred by the

23   administrative exhaustion requirements of the California Tort

24   Claims Act (CTCA); that the claims are barred by statutory

25   immunity; that the claims are not sufficiently pled; and that some

26   of the enumerated causes of action are not, in fact, legally

27   cognizable causes of action.

28   ///

## I. BACKGROUND.

Plaintiff was employed by Defendant from July 10, 2010 to July 12, 2013, when he was fired.  (Compl. ¶ 5.)  Plaintiff alleges that he was employed pursuant to a valid employment agreement with specific terms.  (Compl. ¶ 11.)  Defendant disputes the characterization of Plaintiff's employment as contractual (Mot. Judg. Pleadings § III.K.2), but it also requests the Court take notice of a copy of the employment agreement, which appears to be contractual in nature.  (Req. Judicial Notice, Ex. C.)

Plaintiff alleges that he is or was subject to a number of disabilities and medical conditions, including atrial fibrillation (a form of heart disease), melanoma, plantar fasciitis, hernia, hypertension, and leg cramps.  (Compl. ¶¶ 59-60, 101, 111.)  It is not completely clear from the Complaint, however, that all of these disabilities and conditions affected Plaintiff at the time of his employment. Plaintiff alleges that he "*had suffered* from atrial fibrillation (A-fib) in 2003," (Compl. ¶ 15 (emphasis added)) and "melanoma cancer in 2004."  Id.

Plaintiff appears to allege that he requested reasonable accommodation for his heart-related disabilities by asking for increased staffing in his department (Compl. ¶¶ 37(a).)  He also alleges that he "mentioned" to at least one person that "he needed carpeting in his office due to his plantar fasciitis and leg cramps."  (Compl. ¶ 111.)  However, he alleges, these accommodations were not granted.

Plaintiff further alleges that his superiors were dissatisfied with him for at least two reasons.  First, Plaintiff appears to

allege that Defendant had a policy of attempting to force older employees out; one part of that process, he alleges, was the converting the basis of their employment from "for cause" to "at will." (Compl. ¶ 18.) Plaintiff alleges that he voiced opposition to this policy to his superiors. Id. Second, Plaintiff alleges that his superiors were dissatisfied with his decision not to fire an employee who later "sent a 'whistle-blower' letter to SCRRA's management," as well as his testimony in two depositions supporting that employee's allegations. (Compl. ¶¶ 21-24.)

On Nov. 1, 2011, Plaintiff's employment was unilaterally recharacterized by Defendant; his title changed, his salary went down by $10,000 per year, and the number of employees reporting to him was cut in half. (Compl. ¶ 25.) Plaintiff also alleges that, as time went on, various officers of Defendant refused to work with him, making it impossible to do his job. (Compl. ¶¶ 32-34.) Finally, on July 12, 2013, Plaintiff's employment was terminated. (Compl. ¶ 40.) Plaintiff alleges that during the termination interview, Gary Lettengarver questioned Plaintiff about certain supply shortages implied to be Plaintiff's fault, but that Plaintiff denied that there were such shortages. Id.

**II. LEGAL STANDARD.**

Under Rule 12(c), "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

1   Allegations of fact by the nonmoving party are accepted as true and
2   construed in the light most favorable to that party.  Id. at 230.
3   Judgment on the pleadings is a judgment on the merits.  Id.
4   **III. DISCUSSION.**
5   *A. Threshold Issues*
6   <u>1. Violation of Local Rules and Ethical Breach</u>
7        Plaintiff's Opposition brief is 30 pages in length.  Local
8   Rule 11-6 requires briefs to be 25 pages or less, unless the Court
9   orders otherwise.  The Opposition also appears to be in a smaller-
10  than-typical font.  Local Rule 11-3 specifies the minimum sizes for
11  fonts used in briefs.  Defendant asks the Court, under Local Rule
12  83-7, to strike Plaintiff's Opposition in its entirety, strike the
13  portion after page 21 (because the Defendant calculates that, were
14  it in the correct font, what is now page 21 would end at page 25),
15  or require Plaintiff to re-submit.
16       LR 83-7 does provide for sanctions where parties violate the
17  Rules.  However, it generally confines sanctions to instances in
18  which the party's conduct was "willful, grossly negligent, or
19  reckless," <u>id.</u> at § (a) or "rises to the level of bad faith and/or
20  a willful disobedience of a court order."  <u>Id.</u> at § (b).  <u>See also</u>
21  <u>id.</u> at § (c) (allowing for additional sanctions "for any of the
22  conduct specified in (a) and (b)").  Plaintiff's counsel has acted
23  negligently, but not grossly so.  However, the Court now orders the
24  Plaintiff to comply with all Local Rules in the future, subject to
25  sanctions under LR 83-7(b) if he fails to do so.
26       Defendant also alleges ethical violations on the part of
27  Plaintiff's counsel in directing his assistant to contact SCRRA
28  employee Bill Garrett in August of this year to obtain information

about SCRRA's claims process.  Defendant argues that this constitutes contact with a represented party, violating Cal. RPC 2-100.  Defendant asks that the Court strike all references to the conversation with Garrett from the Harris declaration.

The Court is mindful of the danger posed by attorneys' ethical violations.  However, the Court is not the State Bar.  Its "goal is not to impose a *penalty,* as the propriety of punishment for violation of the Rules of Professional Conduct is a matter within the purview of the State Bar . . . . [T]he court must . . . focus on identifying an appropriate remedy for whatever *improper effect* the attorney's misconduct may have had in the case before it."  McMillan v. Shadow Ridge At Oak Park Homeowner's Ass'n, 165 Cal. App. 4th 960, 968 (2008) (citations omitted) (internal quotation marks omitted).  In this case, because the Harris declaration (except as relates to its exhibits) is excluded as extrinsic evidence, there is no improper effect, assuming an ethics violation occurred.  Therefore, for the Court's purposes Defendant's allegation is moot.  However, Plaintiff's attorney should note that any ethics violations which *do* have an effect on this litigation may subject him to sanctions by this Court as well as whatever action the State Bar may choose to take.

2. Evidentiary Objections

a. *Submitted Materials*

Defendant has submitted and requests judicial notice of six exhibits: (A) the document Plaintiff submitted to present his claims administratively ("Claim Notice"), dated Jan. 3, 2014; (B) memorandum modifying plaintiff's employment contract; (C) the employment contract itself; (D) a Statement of Facts Roster of

Public Agencies Filing for Los Angeles County Metropolitan Transit
Authority (LACMTA, i.e., LA Metro); (E) a Statement of Facts Roster
of Public Agencies Filing for SCRRA as of May 10, 2014; (F) a
Statement of Facts Roster of Public Agencies Filing for SCRRA as of
Jan. 17, 2013.  (Req. Judicial Notice.)

Defendant wishes to rely on Exhibits A, D, E, and F to show
that Plaintiff did not properly file his Claim Notice and therefore
has not satisfied the exhaustion requirements of the CTCA.
Defendant wishes to rely on Exhibits B and C to refute Plaintiff's
contract claims.

Plaintiff has submitted exhibits as well, accompanying a
declaration by Plaintiff's attorney, Dale Fiola: (A) a copy of
Plaintiff's Claim Notice, including attachments detailing
substantially the same arguments as found in the Complaint; (B) a
copy of the proof of service of the Claim Notice; (C) a copy of the
"Joint Exercise of Powers Agreement" forming the SCRRA.

Plaintiff wishes to rely on Exhibits A and B to prove that the
Claim Notice was submitted correctly, or in the alternative that
the attempted submission was in "substantial compliance" with CTCA.
Plaintiff wishes to rely on Exhibit C to show that LACMTA and SCRRA
are fundamentally the same agency, which also goes to the CTCA
issue.  (Briefly, Plaintiff argues that even if he submitted the
Claim Notice to LACMTA instead of SCRRA, his submission was in
compliance with the requirements of CTCA.)

Plaintiff has also submitted a declaration by Fiola's
assistant, Monica Harris, supporting Fiola's factual contentions
about the submission of the Claim Notice and attaching two

1    Exhibits, (A), a receipt from a messenger service, and (B), the

2    cover sheet of the Plaintiff's Claim Notice.

3        Finally, Defendant has also submitted a declaration by SCRRA's

4    Board Secretary, Kari Holman, discussing, inter alia, the proper

5    method for serving a Claim Notice on the agency.  Attached to

6    Holman's declaration is yet another exhibit, a copy of the Claim

7    Notice form that Holman declares is used by SCRRA to take CTCA

8    Claim Notices.

9    *b. Objections*

10       Plaintiff objects to the Holman declaration, arguing that

11   Holman lacks personal knowledge to substantiate her statements

12   about the agency's claim filing requirements.  Plaintiff also

13   objects to the attached exhibit, calling the document both hearsay

14   and unauthenticated.  (Pl.'s Objection Decl. Kari Holman.)

15       Defendant objects to the Fiola declaration, citing numerous

16   instances of what it claims are statements lacking foundation or

17   personal knowledge, hearsay statements, or legal conclusions.

18   Defendant also objects to many statements on general relevancy

19   grounds, arguing that even if the statements are true, they cannot

20   support any legal argument, because "Plaintiff is not excused from

21   the need to strictly comply with CTCA claim requirements."  (Def.'s

22   Objection Decl. Dale Fiola.)  Defendant also objects to Plaintiff's

23   Exhibit B as hearsay and not properly authenticated, and to

24   Plaintiff's Exhibit C as irrelevant and not properly authenticated.

25       Defendant objects to the Harris declaration on similar

26   grounds: relevancy and various examples of alleged hearsay.

27   Defendant also objects to Exhibit B attached to the Harris

28   declaration as irrelevant and not properly authenticated.

1    Finally, Plaintiff invokes Local Rule 7-8 to request that he

2  be allowed to cross-examine Kari Holman about her declaration.

3  *c. Discussion*

4  *i. Request for Judicial Notice*

5    Defendant properly points out that its Exhibits A-C may be

6  "incorporated by reference" into the complaint, because their

7  contents are referenced in the complaint and no party questions

8  their authenticity.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir.

9  2005).  The Court can consider them in ruling on a 12(b)(6) or

10 12(c) motion, even if they are introduced by the defendant.  Branch

11 v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) overruled as to other

12 matters by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th

13 Cir. 2002).

14    Matters of public record are properly subject to judicial

15 notice.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir.

16 2001).  Thus, the Court takes judicial notice of Exhibits D-F.

17 *ii. Defendant's Objections to the Fiola Declaration*

18    As a general matter, in ruling on 12(b)(6) or 12(c) motions,

19 "a district court may not consider any material beyond the

20 pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896

21 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  However, as noted above,

22 matters incorporated into the complaint by reference may be

23 considered, and matters of public record are fit for judicial

24 notice.

25    Here, the Fiola declaration serves two purposes: to introduce

26 specific factual allegations as to the nature of the SCRRA Claim

27 Notice process, and to introduce and authenticate certain exhibits

28 the Plaintiff wishes the Court to consider.  To the extent that the

declaration makes factual allegations, the Court does not consider it.

Some of the exhibits attached to the declaration, however, fall into the exceptions to the general rule noted above. Defendant does not object to Exhibit A, which is in any event just another copy of the Claim Notice.  Exhibit C, a copy of the "Joint Agreement" creating SCRRA, a public agency, is a public record subject to judicial notice.

Exhibit B is not suitable for either judicial notice or incorporation by reference.  It is not from a "source[] whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Nor is it a document which was not appended to the Complaint, but which the Complaint refers to or necessarily relies upon.  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), as amended (July 28, 1998).  The Court does not consider Exhibit B attached to the Fiola declaration.

Thus, Plaintiff's Exhibit A, attached to the Fiola Declaration, is incorporated into the Complaint by reference, and the Court takes judicial notice of Exhibit C.

*iii. Defendant's Objections to the Harris Declaration*

Defendant also objects to the declaration of Monica Harris, Plaintiff's counsel's assistant.  The Harris declaration, to the extent that it discusses the attorney's and Ms. Harris's attempts to submit a Claim Notice, is extrinsic evidence that will not be considered.

Defendant objects to Exhibit B under FRE 901, asserting without argument that the exhibit is not "authenticated."  Public records of this type are not reasonably subject to having their

authenticity questioned, and Defendant does not allege that the exhibit is actually inauthentic.  The Court, for reasons discussed above, declines to interpret it as a challenge to the actual authenticity of the document.  Thus, Exhibits (A) and (B) to the Harris Declaration are also incorporated by reference into the Complaint, as the Complaint appears to necessarily rely on information contained in them.  _Parrino v. FHP, Inc._, 146 F.3d 699, 706 (9th Cir. 1998), as amended (July 28, 1998).

_iv. Plaintiff's Objections to the Holman Declaration_

Plaintiff objects to the Holman declaration.  Holman's declaration itself is extrinsic evidence, and as such is excluded.  The exhibit, on the other hand, is purported to be a public record and so subject to judicial notice.  Plaintiff argues that the document is "hidden from the public and not provided on request," which may or may not be true, but which does not render the document inauthentic.  The Court takes judicial notice of the existence of the claim form.

_v. Request to Cross-Examine Kari Holman_

Plaintiff's request to cross-examine Holman under LR 7-8 is denied.  LR 7-8 provides that parties may cross examine declarants

[o]n motions for and orders to show cause re preliminary injunctions, motions to be relieved from default and _other motions where an issue of fact is to be determined_ . . . .

(Emphasis added.)  A 12(c) motion is, by definition, a motion alleging that there is no material issue of fact.  _See, e.g._, _Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist._, 644 F.3d 934, 937 n.1 (9th Cir. 2011).  Plaintiff argues that Holman's declaration, itself, raises material issues of

10

1  fact: whether SCRRA ever actually received Plaintiff's Claim

2  Notice, and whether SCRRA accepts Metro's claim forms.  But LR 7-8

3  applies only to particular types of *motion*-not in every case where

4  there is a disputed issue of fact.  In any event, Holman's

5  declaration, apart from the attached exhibit, is excluded.  This

6  request is denied.

7  *B. Substantive Claims and Defenses*

8  1. Exhaustion of Administrative Remedies Under the California Tort

9  Claims Act

10      In order to bring this suit, Plaintiff must first have

11  properly submitted his claim to SCRRA under terms prescribed by the

12  CTCA.  See Cal. Gov. Code § 905 ("There shall be presented . . .

13  all claims for money or damages against local public entities . . .

14  ."); id. at § 945.4 ("[N]o suit for money or damages may be brought

15  against a public entity on a cause of action for which a claim is

16  required to be presented . . . until a written claim therefor has

17  been presented to the public entity and has been acted upon by the

18  board, or has been deemed to have been rejected by the board . . .

19  .").

20      Plaintiff alleges in the Complaint that he filed a claim "[i]n

21  compliance with the California Tort Claims Act . . . on January 3,

22  2014 . . . *with Metrolink* . . . ."  (Compl. ¶ 137 (emphasis

23  added).)[1]  At the pleadings stage, such an allegation suffices: "A

24  plaintiff may allege compliance with the claims requirements by

25  including a general allegation that he or she timely complied with

26

27

28      _____

        [1]"Metrolink" is the popular name of SCRRA.

1   the claims statute." See Gong v. City of Rosemead, 226 Cal. App.

2   4th 363, 374 (2014), review filed (June 30, 2014).

3        Defendant, relying primarily on DiCampli-Mintz v. Cnty. of

4   Santa Clara, 55 Cal. 4th 983 (2012), argues that submission to the

5   wrong entity is a failure of compliance with CTCA's requirements.

6   Defendant argues that Plaintiff's Claim Notice was not filed

7   correctly, because Plaintiff's own claim documents (Defendant's Ex.

8   A; Ex. A, Fiola Decl.) show that he submitted the Claim Notice to

9   the Los Angeles County Metropolitan Transit Authority (LACMTA)

10  instead of SCRRA.

11       Plaintiff, in response, makes two arguments that he satisfied

12  the statutory requirements.  First, he argues, he actually did

13  serve the Claim Notice on SCRRA by delivering it to "Board

14  Secretary's Offices-Legal Services, 12th Floor, of One Gateway

15  Plaza, Los Angeles, California." (Opp'n, § IV.E.)  This office, he

16  argues, "operated as a recipient for LACMTA for service of Metro

17  and SCRRA'S [sic] claims for damages." Id.  Second, he argues,

18  Defendant may actually have received the Claim Notice, even if it

19  was delivered to the wrong address or wrong agency.  Id.

20       As to the first point, DiCampli is likely dispositive.  In

21  that case, a plaintiff sent her claim notice to the risk management

22  department of a county hospital rather than the county itself.

23  DiCampli-Mintz v. Cnty. of Santa Clara, 55 Cal. 4th 983, 987

24  (2012).  Parties agreed that "that the letter was never personally

25  served or presented, nor was it mailed to the county clerk or the

26  clerk of the board." Id.  Moreover, "The letters were addressed to

27  the Risk Management Department at VMC, Dr. Bui, and Dr. Sklar . . .

28  [and] did not request that it be forwarded to any of the

statutorily designated recipients . . . ."  <u>Id.</u>  Similarly, here,
all the evidence incorporated into the Complaint by both parties is
in accord: the Claim Notice was sent to LACMTA, not SCRRA.  (Ex. A,
Req. Judicial Notice; Ex. A, Harris Decl.)

Plaintiff argues that because SCRRA is a joint agency created
by, among others, LACMTA, and because the two agencies share a
floor and perhaps a legal services department, presentation of the
claim on one suffices to comply with the presentation requirement
for the other.  (Opp'n, § IV.E.)  Plaintiff relies on <u>Elias v. San</u>
<u>Bernardino Cnty. Flood Control Dist.</u> 68 Cal.App.3d 70, 75 (1977),
and <u>Carlino v. Los Angeles Cnty. Flood Control Dist.</u> 10 Cal.App.4th
1526, 1533 (1992).  However, those two cases, as the California
Supreme Court points out in <u>DiCampli</u>, 54 Cal.4th at 997, dealt with
agencies that shared a *governing body*.  Plaintiff has alleged only
facts to show that LACMTA and SCRRA share some office space and
perhaps a legal services department, not a governing body.
Meanwhile, government records submitted by both parties show that
the two boards are distinct entities, albeit with some overlapping
membership.  (Exs. E & F, Req. Judicial Notice; Ex. C, Fiola Decl.)

In any event, the Court need not decide now whether <u>Elias</u> and
<u>Carlino</u> are on point.  If SCRRA's Board Secretary or other
statutorily authorized officer actually received the Claim Notice,
Plaintiff is in compliance with the CTCA: "A claim . . . shall be
deemed to have been presented in compliance with this section *even*
*though it is not delivered or mailed as provided in this section* if
. . . [i]t is *actually received* by the clerk, secretary, auditor or
board of the local public entity."  Cal. Gov't Code § 915(e)
(emphases added).  Plaintiff correctly points out that Defendant

1  has not denied that the Claim Notice was actually received by a

2  statutorily authorized officer.  Nor has Defendant pointed to any

3  facts in the complaint (or subject to judicial notice) showing that

4  the Claim Notice was not actually received.  Thus, the Court cannot

5  say at this stage-looking solely at the pleadings-that Plaintiff is

6  not in compliance with the CTCA.[2]

7      Because Plaintiff alleged in the Complaint that he submitted

8  the Claim Notice "in compliance" with the CTCA, and because

9  Defendant cannot show on the pleadings that he did not, his

10 Complaint is not affirmatively barred by a failure to exhaust

11 administrative remedies at this stage in the proceedings.

12 2. First and Eleventh Causes of Action Are Barred by Cal. Gov't

13 Code § 815

14     Plaintiff alleges common-law wrongful termination (First

15 Cause) and intentional infliction of emotional distress (IIED)

16 (Eleventh), both common-law torts.  (Compl. ¶¶ 7-54, 167-73.)

17     Cal. Gov't Code § 815 provides that "[e]xcept as otherwise

18 provided by statute . . . [a] public entity is not liable for an

19 injury, whether such injury arises out of an act or omission of the

20 public entity or a public employee or any other person."  The

21 legislative committee comments make clear that "the practical

22 effect of this section is to eliminate any common law governmental

23 liability for damages arising out of torts."  Id. (Legislative

24 Committee Comments). Plaintiff argues that § 815 immunity does not

25 _____

26     [2]Defendant's counsel argued in passing during oral arguments
   that § 915(e) should only apply where the plaintiff presented the
27 claim to the wrong office or person *within* an agency, but not where
   it was presented to the wrong agency entirely.  The plain language
28 of the statute does not lend itself to such a reading, and the
   court is unable to find precedent establishing such a limitation.

cover acts by employees for which the public entity is liable as an
employer under a theory of respondeat superior, which is correct.
"Irrespective of Government Code section 815's elimination of
common law tort liability for public entities, a public employee
generally is liable for an injury caused by his or her act or
omission to the same extent as a private person, and when the act
or omission of the public employee occurs in the scope of
employment the public entity will be vicariously liable for the
injury." Lloyd v. Cnty. of Los Angeles, 172 Cal. App. 4th 320, 330
(2009) (citations omitted) (internal quotation marks omitted).

However, at least with respect to wrongful termination and
retaliation, a supervisor who fires or otherwise takes retaliatory
action against an employee is "necessarily exercising authority the
employer conferred on the supervisor . . . .  Therefore, a common
law . . . cause of action for wrongful termination, or a claim of
retaliation, *lies only against the employer, not against the*
*supervisor* through whom the employer commits the tort. Accordingly,
the doctrine of respondeat superior has no application . . . ."
Id. (emphasis added.)

The first claim is thus barred by immunity.

The eleventh claim, for IIED, essentially alleges that the
alleged "wrongful termination, discrimination, and termination of
Plaintiff without Defendant satisfying the representations and
assurances made to Plaintiff" were all "done for the purpose of
causing Plaintiff to suffer humiliation, mental anguish, and
emotional and physical distress." (Compl. ¶¶ 168-69.)  IIED is a
common law tort and so generally would be barred by § 815.
Plaintiff again argues respondeat superior.  Cal. Gov't Code §

822.2, Plaintiff notes, allows that a public employee may be held
liable for "misrepresentation" if "he is guilty of actual fraud,
corruption or actual malice."  Plaintiff also notes that
"throughout the complaint, there are references to representations"
that, according to Plaintiff, "were later determined to be untrue
and false."  (Reply, § IV.F.3.)  Thus, the Plaintiff argues, the
employees who inflicted this distress should be liable, and
therefore so should SCRRA.

But while it is true that Plaintiff alleges at various points
in the complaint that people have made misrepresentations to him,
the basis of his IIED claim does not rest on those
misrepresentations, which are alleged to have been made to induce
Plaintiff to move and take the job.  Rather, it rests on "wrongful
termination, discrimination, and termination of Plaintiff without
Defendant satisfying the representations and assurances made to
Plaintiff."  (Compl. ¶ 168.)  Even reading this allegation to mean
that the emotional distress results in part from the disparity
between Plaintiff's expectations (based on the employees'
representations) and reality, it is the discrimination and
termination, not the misrepresentation independently, that form the
cause of action.

This is important, because Miklosy v. Regents of Univ. of
California, the controlling opinion on § 815 and claims related to
wrongful termination, makes very clear that torts resulting from
the exercise of the employer's employment authority, even if
committed by an employee, do not pierce § 815 immunity:

The words 'You are fired,' for example, have no legal
significance if spoken by a junior-level employee . . . it is

16

only when the speaker is in a position to exercise authority
on behalf of the employer that these words have significance.
Thus, in a retaliation case, it is the *employer's adverse
employment action* that constitutes the substance of the tort,
and the supervisor's action merges with that of the employer.
We could only hold that the supervisor commits an independent
tort if the supervisor's action were somehow *by itself*
injurious, irrespective of the adverse employment action it
causes the employer to take, but that is not alleged here.

44 Cal. 4th 876, 906 n.8 (2008) (emphases in original).  A
California appellate court, relying on <u>Miklosy</u>, has thus found
infliction of emotional distress claims barred when they
fundamentally rely on adverse employment actions.  <u>McAllister v.
Los Angeles Unified Sch. Dist.</u>, 216 Cal. App. 4th 1198, 1219 (2013)
("The tort of wrongful discharge, and the related infliction of
emotional distress, may only be asserted against the employer.").

Thus, the claim is barred by § 815 immunity.

Defendant's motion is granted as to the first and eleventh
claims.

### 3. Plaintiff's Second, Fifth, and Sixth Causes of Action Are Not Sufficiently Pled

Plaintiff alleges three causes of action under Cal. Gov't Code
§ 12940: disability and medical condition discrimination (Second
Cause); failure to reasonably accommodate his disability (Fifth);
and failure to engage in an "interactive process" to come to such
accommodation (Sixth).  (Compl. ¶¶ 55-73, 99-121.)  Defendant does
not allege that these claims are barred by immunity but does argue
insufficient pleading.  (Mot. Judg. Pleadings § III.E.)

Although Defendant does not deny that Plaintiff has alleged a number of physical impairments and ailments, it does argue that Plaintiff's pleadings do not show, as is required for a disability discrimination claim, that these conditions were present at the time of employment and "[l]imit[] a major life activity." Cal. Gov't Code § 12926(m)(1)(B).

It is true that Plaintiff's pleadings are imprecise as to the exact times when he was affected by his alleged disabilities and medical conditions. For example, he alleges that he "*had suffered from atrial fibrillation (A-fib) in 2003,*" (Compl. ¶ 15 (emphasis added)) and "melanoma cancer in 2004." Id. To the extent that these conditions affected him previously but not during the time of employment, they are, of course, irrelevant.

However, in a motion on the pleadings, the standard of inquiry is whether "the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added). Here, the inference that Plaintiff suffered, at a minimum, heart disease, hypertension, plantar fasciitis, and hernia during the course of his employment is reasonable based on the Complaint. For example, at ¶ 59, Plaintiff alleges that he "was diagnosed with heart disease," and that "during his employment" his supervisors knew of his "heart condition and cancer and plantar fasciitis." At ¶ 62 he says that he "*has* a physical disability" (emphasis added) and then lists heart disease, hypertension, high blood pressure, and plantar fasciitis as his qualifying disabilities under Cal. Gov't Code § 12926.1(c). This tends to suggest that his heart-related problems are chronic and lasted well beyond the 2003

diagnosis.  At ¶¶ 37(a) and 101, Plaintiff alleges that he informed his employers of his (presumably then-existing) heart disease, hypertension, and plantar fasciitis or conditions related to them, as well as conditions related to the cancer.  Although not skillfully pled, taken together, these factual allegations are enough to support, at the pleadings stage, the inference that Plaintiff suffered at least some of the named impairments during his employment.

But Plaintiff's allegations that his physical conditions caused him "difficulty" or "limited" him in some major life activity (presumably work) are not sufficient, because he does not adequately allege that the impairment limited his ability to work. For example, Plaintiff alleges that he told a supervisor he "needed carpeting" because of plantar fasciitis, but he does not explain how plantar fasciitis impaired his ability to work.  (E.g., Compl. ¶ 111.)  Plaintiff also alleges that he "had difficulties performing his job duties when crucial staff positions were not filled, requiring him to work extensively in an environment not conducive to his health and wellbeing."  (Compl. ¶ 113; see also id. at 33 (describing inadequate staffing that "made it extremely difficult for Plaintiff to perform his job duties"); id. at 36 (alleging that he was required to perform work unusual for a Director, including "supervising the warehouse").)  But he does not explain how inadequate staffing made his job more difficult *as a person with a disability*, above and beyond the usual pains and difficulties suffered by every person working at an understaffed public agency.

1     Defendant also argues, regarding the fifth and sixth causes of
2  action but obviously also touching on the second, that Plaintiff
3  does not sufficiently plead that he asked for accommodation.
4  Plaintiff alleges in a number of places that he informed specific
5  people that he needed an accommodation.  (E.g., Compl. ¶ 27
6  (alleging requests to named supervisors for accommodations "to
7  handle his job duties given his medical condition, A-fib, high
8  blood pressure, and other medical issues"); Compl. ¶ 111 (alleging
9  request to named supervisor for carpeting to accommodate his
10 plantar fasciitis).)  However, because the pleading with regard to
11 the underlying qualifying disabilities is insufficient, and the
12 disabilities are a prerequisite to the claims regarding reasonable
13 accommodation and the interactive process, all three causes of
14 action fail for insufficient pleading.

15     It appears that these defects could be corrected with more
16 careful pleading.  Therefore, Plaintiff's second, fifth, and sixth
17 claims are dismissed without prejudice, and Plaintiff is free to
18 amend his Complaint so that it properly states a claim for
19 disability discrimination.

20 4. Plaintiff's Third Cause of Action is Not Sufficiently Pled

21     Plaintiff alleges that he was fired, in part, due to age
22 discrimination.  (Compl. ¶¶ 74-86.)  Defendant argues that
23 Plaintiff's pleadings do not establish a *prima facie* case of age
24 discrimination.  Specifically, Defendant relies on a four-part test
25 articulated in Muzquiz v. City of Emeryville: "*In the context of*
26 *the usual age discrimination case*, a prima facie case of age
27 discrimination arises when the employee shows that: (1) at the time
28 of the adverse employment action, the employee was 40 years of age

1 or older; (2) some adverse employment action was taken against the
2 employee; (3) at the time of the adverse action the employee was
3 satisfactorily performing his or her job; and (4) the employee was
4 replaced in his or her position by a significantly younger person.
5 79 Cal. App. 4th 1106, 1116 (2000) (emphasis added).

6    Defendant argues that Plaintiff does not sufficiently plead
7 facts to show the last two elements, because (1) he admits that at
8 the time of his termination he was told that it was because of
9 alleged shortages that, it was implied, he had caused (Compl. ¶
10 76); and (2) he does not allege that he was replaced by a younger
11 employee.

12    As to the first point, Plaintiff, in fact, does allege that he
13 was doing his job satisfactorily.  At ¶ 76 he essentially says that
14 "if there were any errors or mistakes committed," they were
15 committed by others, and at ¶ 40 Plaintiff flatly denies that there
16 were shortages on his watch.  It would make a mockery of anti-
17 discrimination provisions to suggest that a mere statement of
18 dissatisfaction by the employer—a statement which might be entirely
19 pretextual and unsupported—could prevent a plaintiff from making
20 out a prima facie discrimination case.

21    As to the second point, it is not without merit.  However, the
22 test described by Muzquiz is not the sole method of making out a
23 prima facie age discrimination case: "Given the varying nature of
24 the problem, it is impossible to make an exact, all-inclusive
25 statement of the elements of a prima facie age discrimination case
26 applicable in all situations.  The general requirement is that the
27 employee offer *circumstantial evidence such that a reasonable*
28 *inference of age discrimination arises*."  Hersant v. Dep't of Soc.

<u>Servs.</u>, 57 Cal. App. 4th 997, 1002 (1997) (citations omitted) (emphasis added).  And the fourth element, in particular, may not always be necessary.  <u>Id.</u> at 1003 n.3 (noting contrary authority).

Even under a more generous test, however, it is hard to see how Plaintiff has made out a prima facie case.  Apart from noting his own age and the fact of his termination, he offers two key facts.  First, he says, "younger employees were allowed to stay with the company," even though, he alleges, it was they who were responsible for whatever "errors or mistakes" may have been made during his tenure.  (Compl. ¶ 76.)  And second, he appears to allege that Defendant had a general policy of attempting to force older employees out.  (Compl. ¶ 18.)

But Plaintiff does not allege that the younger employees held similarly managerial positions.  They may have been allowed to stay because they were not ultimately responsible for the efficient running of the department.  And while Defendant may well have a policy of forcing out older employees, it is unclear why, if that is true, it hired Plaintiff at the age of 57 or 58 in the first place.  In short, Plaintiff does not offer "circumstantial evidence such that a reasonable inference of age discrimination arises." <u>Hersant</u>, 57 Cal. App. 4th at 1002.

The Court grants the Defendant's motion as to Plaintiff's third claim.

<u>5. Plaintiff's Fourth Cause of Action is Sufficiently Pled</u>

Plaintiff alleges that his supervisors first shut him out of communications and then terminated him in retaliation for his "challenge" to certain employment policies he felt to be discriminatory, failure to fire an employee who later became a

"whistleblower," and deposition testimony supporting the
whistleblower.  Plaintiff alleges that this violates Labor Code §
1102.5, as well as the California and U.S. Constitutions.  (Compl.
¶ 87-98.)  Defendant argues, first, that Plaintiff did not properly
exhaust his administrative remedies under Labor Code § 98.7 before
pursuing a claim under § 1102.5, and second, that he did not plead
sufficient facts to establish the claim.

     As to exhaustion, the California legislature recently amended
the Labor Code to clarify that administrative exhaustion is not
required.  See Cal. Lab. Code § 244(a) (effective Jan. 1, 2014)
("An individual is not required to exhaust administrative remedies
or procedures in order to bring a civil action under any provision
of this code, unless that section under which the action is brought
expressly requires exhaustion of an administrative remedy."); id.
at § 98.7(g) (effective Jan. 1, 2014) ("In the enforcement of this
section, there is no requirement that an individual exhaust
administrative remedies or procedures.").  Plaintiff filed his
complaint in March, well after these provisions took effect.
Therefore, his complaint was not barred by a requirement that he
exhaust administrative remedies.

     As to pleading, establishing a prima facie case of retaliation
under § 1102.5 is refreshingly simple: "a plaintiff must show (1)
she engaged in a protected activity, (2) her employer subjected her
to an adverse employment action, and (3) there is a causal link
between the two."  Patten v. Grant Joint Union High Sch. Dist., 134
Cal. App. 4th 1378, 1384 (2005).  There is no question that
Plaintiff alleges adverse employment actions: he alleges being
effectively demoted, excluded from staff meetings, undermined with

respect to third party vendors, and eventually terminated.  (Compl.
¶ 92.)  Thus, the crucial questions are whether he engaged in
"protected activities," and whether the adverse actions were caused
by those activities.

> Under 1102.5, an employee engages in a protected activity if
> he disclos[es] information to a government or law enforcement
> agency, *to a person with authority over the employee*, or to
> another employee who has authority to investigate, discover,
> or correct the violation or noncompliance . . . if the
> employee has *reasonable cause to believe that the information*
> *discloses a violation of state or federal statute*, or a
> violation of or noncompliance with a local, state, or federal
> rule or regulation, regardless of whether disclosing the
> information is part of the employee's job duties.

Cal. Lab. Code § 1102.5(a) (emphases added).

> Plaintiff's allegation that he refused to go along with an
alleged scheme to force out older workers suffices to show he
engaged in a protected activity.  He reported to a "person with
authority over" him that he believed "the conversion practice had a
discriminatory effect based upon age."  Age discrimination violates
California law.  Cal. Gov't Code § 12940.  Hence, reading the
pleadings in the light most favorable to Plaintiff, he can
reasonably be inferred to have been informing his supervisor of a
potential or actual violation of the law.

> Plaintiff's allegation that he testified "truthfully in
support of" a whistleblower's allegations also constitutes
sufficient pleading.  (Compl. ¶ 22.)  Assuming that the
whistleblower was under § 1102.5's protection, it seems elementary

1  that those giving deposition testimony in an investigation of her

2  case should also be protected.

3       The causal element is, of course, the hardest to prove.  But

4  Plaintiff has alleged multiple facts creating at least a minimally

5  plausible narrative that he began to experience adverse treatment

6  only after engaging in these protected activities, and he alleges

7  that one of his supervisors acknowledged that there was pressure to

8  fire him after the whistleblower incident.  (Compl. ¶ 24.)  That

9  suffices at the pleadings stage.

10      Thus, Plaintiff alleges sufficient facts to support a

11 retaliation claim.  Accordingly, Defendant's motion is denied with

12 regard to the fourth claim.

13 <u>6. Plaintiff's Seventh and Eighth Causes of Action Are Not Barred</u>

14 <u>by Immunity and Require More Factual and Legal Development to Be</u>

15 <u>Resolved</u>

16      Plaintiff alleges that Defendant, in changing the terms of his

17 employment and later in terminating him, breached his employment

18 contract as well as the implied covenant of good faith and fair

19 dealing imputed to contracts under California law.  (Compl. ¶ 122-

20 47.)  Defendant argues that § 815 immunity applies; that government

21 employment is statutory rather than contractual; and that in any

22 event, if there was a contract, it was terminated and replaced with

23 a different contract rather than breached.

24      Section 815 immunity does not apply.  That statutory immunity

25 applies only to torts (see above).  Contractual liability is

26 specifically excepted.  Cal. Gov't Code § 814 ("Nothing in this

27 part affects liability based on contract . . . .").  While the

28 covenant of good faith and fair dealing can sound in tort where the

defendant is an insurer, <u>Silberg v. California Life Ins. Co.</u>, 11
Cal.3d 452, 460 (1974), it is otherwise an aspect of contract law,
subject to contract remedies—especially in the area of employment.
<u>Foley v. Interactive Data Corp.</u>, 47 Cal. 3d 654, 683 (1988).

It is true that generally "public employment is not held by
contract but by statute and that, insofar as the duration of such
employment is concerned, no employee has a vested contractual right
to continue in employment beyond the time or contrary to the terms
and conditions fixed by law." <u>Miller v. State</u>, 18 Cal.3d 808, 813
(1977).[3]

On the other hand, when it comes to issues *other than tenure
of employment*, it is clear that public employees *do* have
contractual rights. "Although the tenure of a public employee is
not ordinarily based on contract, it is well established that
public employment gives rise to certain obligations which are
protected by the contract clause of the Constitution, including the
right to the payment of salary which has been earned. [S]ince a
pension right is an integral portion of contemplated compensation
it cannot be destroyed, once it has vested, without impairing a
contractual obligation." <u>Miller</u>, 18 Cal. 3d 808, 815 (1977)
(citations omitted) (internal quotation marks omitted). <u>See also</u>
<u>Shaw v. Regents of Univ. of California</u>, 58 Cal. App. 4th 44, 55
(1997) ("We find no merit in the University's suggestion that, as a
public employee who is employed pursuant to statute, not contract,

---

[3]Contra some of the arguments in the Opposition, <u>Miller</u>'s
holding, by its plain terms, applies to all public employees, not
merely civil service employees—though, in any event, Plaintiff's
position does not appear to fall into one of the few exceptions to
civil service allowed by Cal. Const. art. 7, § 4.

Shaw has no vested contractual right in his terms of employment, *such terms being subject to change by the University* . . . . When a public employer chooses . . . to enter into a written contract with its employee . . . it cannot later deny the employee the means to enforce that agreement.") (emphasis added).

Thus, it seems clear that while the ultimate termination of Plaintiff's employment cannot be barred by his contract (which was in any event at-will), changes to the *terms* of his employment, as long as he is not terminated, might well constitute a cognizable breach of contract.

Perhaps recognizing this, Defendant argues that it had a right to unilaterally modify the contract, or more precisely, to replace it altogether with a different agreement. Defendant cites DiGiacinto v. Ameriko-Omserv Corp. for the proposition that "as a matter of law, an at-will employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions . . . . [T]he old contract has been expressly or impliedly terminated by the employer's modification. The modification constitutes, in legal effect, both the termination of the old contract and the offer of a new contract." 59 Cal. App. 4th 629, 637 (1997).

But as far as can be determined from the facts of that case, id. at 632, the contract at issue in DiGiacinto did not have an anti-modification clause. By contrast, Plaintiff's contract with Defendant did contain such a clause: "This agreement may not be modified unless said modification is in writing and signed by AUTHORITY and HENDERLONG." (Ex. C, Request for Judicial Notice, §

27

9.3.)  The Court declines, at this stage, to find a valid contract clause a nullity solely because the contract was at-will.  <u>See</u> <u>Munson v. Splice Commc'ns, Inc.</u>, 12-CV-05089-JCS, 2013 WL 6659454 (N.D. Cal. Dec. 16, 2013) ("Defendants' reliance on <u>DiGiacinto</u> . . . is misplaced, however, because in that case the change in the employment agreement was made in writing whereas here there is no evidence that Munson received written notice of the change. As the offer letter expressly states that modifications must be made in writing by the COO, the Court rejects Defendants' assertion that Munson accepted the changed terms of his employment agreement as to control over the inside sales team.") (citation omitted).

As to termination of his employment, then, Plaintiff cannot assert a breach of contract action.  As to unilateral modifications of the *terms* of the contract, however, his claim is not barred and cannot be disposed of as a matter of law on the pleadings.

<u>7. Plaintiff's Ninth, Tenth, and Twelfth Causes of Action Are Barred by Cal. Gov't Code § 818.8</u>

Plaintiff alleges various forms of tortious misrepresentation on the part of SCRRA in inducing him to leave Colorado and move to California to take the job at issue.  He alleges violation of the Labor Code § 970 (Ninth Cause), common-law fraud (Tenth), and negligent misrepresentation (Twelfth).  (Compl. ¶¶ 148-166, 174-176.)  Defendant, however, argues that public entities are not liable for the misrepresentations of their employees under Cal. Gov't Code § 818.8 ("A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity.").  <u>See also</u> <u>Burden v. Cnty. of Santa Clara</u>, 81 Cal. App. 4th 244, 251 (2000) (holding that § 818.8 applies to representations in the

context of employment with the public entity).  Plaintiff argues
that § 818.8 does not apply to claims relying on promissory
estoppel, because promissory estoppel is an equitable doctrine,
over which the CTCA has no effect.  Cal. Gov't Code § 814.

Even if the Court accepted that argument, however, Plaintiff
does not assert promissory estoppel, which is indeed an equitable
doctrine imputing a quasi-contract where no actual contract exists.
Here, as, Plaintiff argues in his seventh cause of action, a valid
contract was formed.

Plaintiff's ninth, tenth, and twelfth claims are all barred by
§ 818.8.  The Court grants Defendant's motion with respect to those
claims.

<u>8. Plaintiff's Thirteenth and Fourteenth Causes of Action Are Not
Proper Causes of Action</u>

Plaintiff also alleges frustration of purpose and rescission
of contract.  Plaintiff alleges that Defendant's actions "resulted
in substantial frustration to Plaintiff's contract of employment
without the fault of the plaintiff," (Compl. ¶ 182) and asks for a
"rescission of the position reclassification" and "restoration of
the original employment agreement." (Compl. ¶¶ 185-88.)

Defendant is correct that these are simply not cognizable
causes of action.  They are, respectively, a defense to breach of
contract and a remedy.

Even assuming Plaintiff meant to assert the defense and
request the remedy, they are not appropriate.  There has been no
allegation that Plaintiff breached his employment (or any other)
contract, so the defense of frustration of purpose is unnecessary.
Rescission of contract is likewise not necessary, since, under

1   Plaintiff's apparent theory of his own contract claim, the original

2   contract was still in force until his termination.

3        The Court grants the Defendant's motion as to Plaintiff's

4   thirteenth and fourteenth claims.

5   **IV. CONCLUSION.**

6        Defendant's motion is granted with respect to Plaintiff's

7   first, third, and ninth through fourteenth causes of action.  The

8   second, fifth, and sixth causes of action are dismissed without

9   prejudice.  With regard to the fourth cause of action the motion is

10  denied.  The motion is also denied regarding the seventh and eighth

11  causes of action, inasmuch as those causes of action relate to the

12  modification of the contract.  Inasmuch as they relate to

13  Plaintiff's termination, however, Defendant's motion is granted

14  with regard to those claims as well.

15

16  IT IS SO ORDERED.

17

18  Dated: September 18, 2014

          DEAN D. PREGERSON
          United States District Judge

19

20

21

22

23

24

25

26

27

28